UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID BROWN,

    *Plaintiff,*

v.

DR. DONALD HAIDERER,
SUSAN McCAULEY,
RICKEY COLEMAN, and
LAURA BROWN,

    *Defendants*.

                        /

CASE NO. 4:21-cv-11565

DISTRICT JUDGE MATTHEW F. LEITMAN
MAGISTRATE JUDGE PATRICIA T. MORRIS

## REPORT AND RECOMMENDATION ON DEFENDANTS RICKEY COLEMAN AND LAURA BROWN'S MOTION FOR SUMMARY JUDGMENT (ECF No. 25)

### I. RECOMMENDATION

For the following reasons, **I RECOMMEND** that this Court **GRANT** Defendants Rickey Coleman, D.O. and Laura Brown, N.P.'s motion for summary judgment on the basis of exhaustion, dismissing claims against them **WITHOUT PREJUDICE**. (ECF No. 25).

### II. REPORT

#### A. Background

On June 21, 2021, Plaintiff David Brown, a Michigan Department of Corrections ("MDOC") prisoner housed at the G. Robert Cotton Facility ("JCF") in Jackson, Michigan, filed suit in this Court, alleging violations of his First and Eighth Amendment rights under

1

42 U.S.C. § 1983; violations of the Americans with Disability Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*; and the Rehabilitation Act ("RA"), 29 U.S.C. § 794, *et seq.*

The Complaint contains the following factual allegations.

Plaintiff requested the replacement of corrective contact lenses which were lost during a prisoner transfer. (ECF No. 1, PageID.16, ¶ 3). Before he could obtain the replacement lenses, he was again transferred, this time to the Saginaw Correctional Facility ("SRF"). Plaintiff made optometrist Defendant Donald Haiderer, O.D. aware of medical records dating back to 2006 showing that the contact lenses were "the best option." (*Id.* at PageID.16-17, ¶ ¶ 3, 5-6).[1] Plaintiff informed Haiderer that the vision correction was required for reading, cleaning, and participating in services, programs, and other activities. (*Id.* at PageID.17, ¶ 3). Haiderer refused Plaintiff's requests for the medical accommodations of ramps, access to elevators, a handicap cell, and assistance with reading and writing. (*Id.* ¶ 4). Plaintiff did not receive an eye examination until one year after the request and in the meantime experienced blackouts, dizziness, blurred vision, and shooting pain in both eyes. (*Id.*). During the eye exam by Haiderer, Plaintiff reported migraine headaches and dizzy spells due to lack of vision correction. (*Id.*, ¶ 5). Haiderer refused to submit a referral for a contact lens fitting, but instead gave him a prescription for eyeglasses. (*Id.*). Plaintiff alleges that Haiderer intentionally disregarded the earlier medical records showing the need for contact lenses and falsely stated in his own records that Plaintiff was malingering. (*Id.* at PageID.18, ¶ ¶ 7-10). At a later eye examination in

---

[1] It is unclear whether Plaintiff notified Haiderer of the medical history and asked for accommodations for the vision impairment prior to or during Haiderer's examination.

2021 in which Plaintiff was unable to read even the top line of the eye chart, Haiderer again refused to make a referral for a contact lens fitting, telling Plaintiff to "either accept eyeglasses or nothing." (*Id.* at PageID.19, ¶ 12).

Plaintiff informed Defendant Laura Brown, N.P.[2] that his vision was deteriorating and requested an eye examination and fitting for contact lenses. (*Id.* ¶ 14). In response, Brown submitted a referral for a contact lens fitting. (*Id*. at PageID.20, ¶ 14). But when Haiderer learned of the referral, he scheduled his own examination and instead recommended the use of eyeglasses. (*Id.* at ¶¶ 14-5). Plaintiff alleges that Haiderer deliberately prevented him from obtaining an evaluation and fitting for the medically necessary contact lenses. (*Id*. at ¶¶ 15-25).

Plaintiff also alleges that Defendant McCauley, SRF's Health Unit Manager ("HUM") was aware of his medical history but instead of providing a referral for a contact lens fitting, scheduled an appointment with Dr. Haiderer, whom she was aware was not qualified to perform an adequate evaluation of the eye condition. (*Id.* at PageID.24-30, ¶¶ 27-33, 35-49).

Defendant Rickey Coleman, an employee of Corizon, MDOC's health care provider, instructed Haiderer to deny the request for contact lenses. (*Id.* at PageID.26, ¶ 34). Plaintiff alleges that Coleman knew or should have known that Haiderer was unqualified to assess Plaintiff's eye condition. (*Id.* at PageID.33, ¶ 58).

---

[2] While the Complaint refers to Defendant Brown as a physician's assistant, she is identified as a nurse practitioner in the present motion. (ECF No. 25, PageID.114).

3

As to Brown, the Complaint states that Brown "refused to correct" Haiderer and McCauley's determination that contact lenses were not a medical necessity despite Brown's awareness of the headaches, loss of balance, and blurred vision caused by the lack of vision correction. (*Id.* at PageID.31, ¶¶ 50-51). In response to several kites requesting a referral for a contact lens fitting, Brown refused, stating that she did not want to get involved any further, although she continued to treat Plaintiff for headaches caused by vision problems. (*Id.* at PageID.31-33, ¶¶ 52-57). Plaintiff alleges that she changed his medication to "cover up" the headaches and loss of balance brought on by blurred vision. (*Id.* at PageID.31, ¶ 51).

Plaintiff requests monetary damages.

B.  **Summary Judgment Standard**

A court will grant a party's motion for summary judgment when the movant shows that "no genuine dispute as to any material fact" exists. Fed. R. Civ. P. 56(a). In reviewing the motion, the court must view all facts and inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party bears "the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986)) (internal quotation marks omitted). In making its determination, a court may consider the plausibility of the movant's evidence. *Matsushita*, 475 U.S. at 587-88. Summary judgment is also proper when the moving party shows that the non-moving party cannot meet its burden of proof. *Celotex*, 477 U.S. at 325.

4

The non-moving party cannot merely rest on the pleadings in response to a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993). The non-movant cannot withhold evidence until trial or rely on speculative possibilities that material issues of fact will appear later. 10B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2739 (3d ed. 1998). "[T]o withstand a properly supported motion for summary judgment, the non-moving party must identify specific facts and affirmative evidence that contradict those offered by the moving party." *Cosmas v. Am. Express Centurion Bank*, 757 F. Supp. 2d 489, 492 (D. N.J. 2010). In doing so, the non-moving party cannot simply assert that the other side's evidence lacks credibility. *Id.* at 493. And while a pro se party's arguments are entitled to liberal construction, "this liberal standard does not ... 'relieve [the party] of his duty to meet the requirements necessary to defeat a motion for summary judgment.'" *Veloz v. New York*, 339 F. Supp. 2d 505, 513 (S.D.N.Y. 2004) (quoting *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003)). "[A] pro se party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D. N.Y. 1995) (quoting *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

When the non-moving party fails to adequately respond to a summary judgment motion, a district court is not required to search the record to determine whether genuine issues of material fact exist. *Street*, 886 F.2d at 1479-80. The court will rely on the "facts

5

presented and designated by the moving party." *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 404 (6th Cir. 1992). After examining the evidence designated by the parties, the court then determines "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so onesided that one party must prevail as a matter of law." *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). Summary judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

### C. Exhaustion Under the PLRA

Under the Prison Litigation Reform Act ("PLRA") of 1996, specifically 42 U.S.C. § 1997e(a) (2016), "[n]o action shall be brought with respect to prison conditions under § 1983 ... by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The exhaustion requirement is mandatory and applies to all suits regarding prison conditions, regardless of the nature of the wrong or the type of relief sought. *Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731, 741 (2001). Furthermore, "exhaustion" under the PLRA means "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 92 (2006). In *Woodford*, the Supreme Court defined "proper exhaustion" as requiring "compliance with an agency's deadlines and other critical procedural rules...." *Woodford*, 548 U.S. at 90.

MDOC Policy Directive ("P.D.") 03.02.130 (March 18, 2019) prescribes the three-step administrative exhaustion process for grievable matters. At Step I, a prisoner must "attempt to resolve the issue with the staff member involved within two business days"

6

and, if unsuccessful, must file a grievance within five business days. *Id.* at ¶ Q. If the inmate is dissatisfied with the disposition of the grievance, or does not receive a response ten days after the due date, he or she may file a Step II grievance using the appropriate form. *Id.* at ¶ DD. Similarly, if the inmate is dissatisfied with the Step II response or does not receive a response for ten days after the response was due, he or she may file a Step III grievance. *Id.* at ¶ HH.

To be properly exhausted, a defendant must be named at Step I. P.D. 03.02.130, ¶ S provides:

> The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places, and names of all those involved in the issue being grieved are to be included.

### D. Analysis

#### 1. Laura Brown, N.P.

In the Complaint, Plaintiff makes the following allegations against Brown: She refused to "correct" Haiderer's finding that contact lenses were not necessary; refused to intervene in Haiderer and McCauley's determination that contact lenses were not a medical necessity despite being aware of the headaches, loss of balance, and blurred vision; declined to recommend a second referral for a contact lens fitting after Dr. Haiderer determined that the lenses were not necessary; and changed Plaintiff's medication to hide the fact that the lack of vision correction caused the above-described physical problems. (ECF No 1, PageID.20, 31-33, ¶¶ 14, 50-57).

##### a. Grievance Identifier SRF 2020 12-0970-27z

7

At Step I of Grievance Identifier SRF 2020 12-0970-27z, Plaintiff names Brown, but states only that she put him at "serious risk" of COVID-19 by failing to prescribe a walking stick or service dog. (ECF No. 25-1, PageID.138). The grievance alleges that as a result, Plaintiff was required to use a "human aide to navigate the prison compound, exposing him to an active case of COVID-19. (*Id.* at PageID.138). Present Defendants point out that while SRF 2020 12-0970-27z names Brown, it does not allege or even mention the allegations in the Complaint but is limited to the claim that Brown was deliberately indifferent to Plaintiff's risk of contracting COVID-19 by refusing to prescribe a walking stick or service dog. (ECF No. 25, PageID.114-115, 138), (ECF No. 25-1, PageID.138).

Defendants are correct that the contents at Step I of Grievance Identifier SRF 2020 12-0970-27z are wholly unrelated to the allegations against Brown stated in the Complaint. Because this grievance does not include the "what" of the "who, what, when, where, [and] why" required at Step I, the claims against Brown set forth in the Complaint are not exhausted by this grievance. *See* P.D. 03.02.130, ¶ S.

**b. Grievance Identifier SRF 2021-03-0409-28a**

In response to the present motion, Plaintiff contends that he "properly exhausted" claims against all four Defendants and "if he did not exhaust," it was because MDOC staff ensured that there was "no remedy available." (ECF No. 36, PageID.194). He provides a March 23, 2021 Step I Grievance Identifier SRF 2021 03-0409-28a which states that Brown, along with Haiderer, McCauley, and "Corizon ACMO unknown" intentionally deprived him of medically necessary contact lenses. (*Id.* at PageID.200). Plaintiff argues,

8

in effect, that because SRF 2021 03-0409-28a was rejected as duplicative of an earlier grievance (SRF 2020-03-0185-12g),[3] he was not required to pursue grievance SRF 2021 03-0409-28a through Steps II and III. (*Id.* at PageID.198). He appears to contend that the Step I submission in Grievance Identifier SRF 2021 03-0409-28a, coupled with his Step II statement in SRF 2020 12-0970-27z naming Brown, puts her on "fair notice" of the allegations in the Complaint. (*Id.* at PageID.196, 200-201).

In reply, Defendants acknowledge that SRF 2021 03-0409-28a was rejected because it duplicated SRF 2020-03-0185-12g, filed approximately one year earlier. (ECF No. 39, PageID.231). However, Defendants argue that the rejection does not change the analysis because Plaintiff failed to appeal either SRF 2020-03-0185-12g or SRF 2021 03-0409-28a through Step III of the grievance process. (*Id.*).

Contrary to Plaintiff's claim, his Step I submission in SRF 2020 12-0970-27z naming Brown does not pertain to Brown's alleged failure to arrange a contact lens fitting but rather, that he requires an assistive device to avoid contracting COVID-19. (*Id.* at PageID.201). As discussed above, these claims are unrelated to allegation against Brown set forth in the Complaint. Plaintiff's Step II submission in the same grievance restates his Step I request for an assistive device and could not have put Brown on notice of the Complaint's allegations. (*Id.* at PageID.201), (ECF No. 25, PageID.138).

---

[3] At Step I of Grievance Identifier SRF 2020-03-0185-12g, Plaintiff states that he is not being fitted for the medically necessary contact lenses, resulting in functional limitations. (ECF No. 39-1, PageID.234). But this grievance names only Haider and McCauley, not Brown. (*Id.*). Likewise, the Step I submission to Grievance Identifier SRF 2020-10-0697-12g3 stating that Plaintiff is unfairly being deprived of contact lenses does not name Brown. (ECF No. 25-1, PageID.134).

9

While it is true that Plaintiff's Step II submission in one grievance, SRF 2020-10-0697-12g3 mentions Brown in relation to the allegations in the Complaint, the Step I submission of the same grievance does not name Brown. (*Id.* at PageID.132,134). Plaintiff's failure to name Brown at Step I of that grievance omits the "who" from the "who, what, when, where, why, how" requirements for a Step I grievance set forth in P.D. 03.02.130, ¶ S. To constitute proper exhaustion under MDOC policy, a specific defendant must be identified at Step I of the process. *See Burton v. Jones*, 321 F.3d 569, 574 (6th Cir. 2003), *abrogated on other grounds* by *Jones v. Bock*, 549 U.S. 199 (2007). ("[W]e understand [MDOC] policies to preclude administrative exhaustion of a claim against a prison official if the first allegation of mistreatment or misconduct on the part of that official is made at Step II or Step III of the grievance process.").

Plaintiff's claim that the "who" or "what" deficiencies in one grievance can be cured, without more, by naming Brown at Step I of another, unexhausted grievance is without merit. While Plaintiff's Step I submission in Grievance Identifier SRF 2021-03-0409-28a arguably states both the "who" and "what" deficiencies in the other grievances, Plaintiff concedes that did not complete Steps II and III of that grievance as required to exhaust his administrative remedies as required by P.D. 03.02.130, ¶¶ DD, HH. (ECF No. 36, PageID.194, 197).

Moreover, Plaintiff's contention that administrative remedies were "unavailable" after his SRF 2021 03-0409-28a Step I submission was rejected as duplicative does not rescue his claim. To be sure, a prisoner's duty to exhaust his or her administrative remedies prior to filing a Complaint in federal court extends only to those remedies that are

10

"available" to the prisoner. *Ross v. Blake*, 578 U.S. 632, 642 (2016) (citing § 1997e(a)). However, the grievance's rejection at Step I did not prevent him from appealing the rejection at Steps II and III. *See Rhinehart v. Scutt*, No. 2:10-CV-10006-DT, 2011 WL 679699, at *5 (E.D. Mich. Jan. 14, 2011) (Komives, M.J.), *report and recommendation adopted,* No. 10-CV-10006, 2011 WL 674736 (E.D. Mich. Feb. 16, 2011):

> [The plaintiff] essentially argues that exhaustion would have been futile once his Step I grievance was rejected as untimely. . . . This argument is without merit. In the first place, the mere fact that the grievance had been rejected on a procedural basis does not render further review futile. On the contrary, the whole point of further review is to challenge the correctness of the result reached on a lower level of review. And, in any event, there is no futility exception to the exhaustion requirement.

(citing *Booth,* 532 U.S. at 741 n.6); *see also Taylor v. Wright*, No. 20-13041, 2021 WL 7448513, at *5 (E.D. Mich. Aug. 16, 2021) (Ivy, M.J.), *report and recommendation adopted,* No. 20-13041, 2022 WL 476067 (E.D. Mich. Feb. 16, 2022) ("[T]he fact that the grievance was rejected at Step I does not mean the grievance process on that grievance became unavailable. Plaintiff's recourse, if he so chose, was to appeal the grievance."); *Russell v. Berkshire*, No. 1:19-CV-1014, 2020 WL 6498910, at *2 (W.D. Mich. Nov. 5, 2020) (the grievance process was not "unavailable" to Plaintiff" after her Step I submission was rejected, "rather, she failed to comply with it."). While Plaintiff can argue that his grievance was improperly rejected as duplicative at Step I, his remedy was to appeal that determination at Steps II and III.[4]

---

[4] Plaintiff's argument that he did not believe that he was required to appeal Grievance Identifier SRF 2021 03-0409-28a to Step II or III is also undermined by the fact that he has appealed another rejected grievance through Step III. (ECF No. 25-1, PageID.144-145).

11

In sum, Plaintiff's grievance activity did not serve to exhaust the administrative remedies as to Brown. In one exhausted grievance, Brown was named at Step I but his claims are unrelated to those stated in the Complaint. SRF 2020 12-0970-27z. (ECF No. 25-1, PageID.138). In his second grievance, Plaintiff names Brown and sets forth the relevant claims, but does not do so until Step II. SRF 2020-10-0697-12g3. (*Id.* at PageID.134). Grievance Identifier SRF 2020-03-0185-12g3 sets forth claims related to the Complaint but does not name Brown at Step I. (ECF No. 39-1, PageID.234). In a fourth grievance, he names Brown at Step I and sets forth the relative claims, but does not pursue his administrative remedies beyond Step I. SRF 2021 03-0409-28a (ECF No. 36, PageID.200). Because none of the grievances, standing alone, properly exhausted the allegations against Brown found in the Complaint, claims against her should be dismissed without prejudice.[5]

**2. Rickey Coleman**

The Complaint's allegations against Defendant Rickey Coleman, D.O. consist of the following: On March 10, 2021, Coleman, an employee of Corizon, instructed Haiderer to deny the request for contact lenses although he was aware that the use of contact lenses had been recommended by a previous medical care provider and that

---

[5]Dismissal for failure to exhaust administrative remedies under § 1997e "should be without prejudice." *Boyd v. Corr. Corp. of Am.*, 380 F.3d 989, 994 (6th Cir. 2004). Present Defendants have asked for dismissal "Solely on the Failure to Exhaust Administrative Remedies." (ECF No. 25, PageID 105). The Court declines to consider whether dismissal with prejudice is appropriate on the basis that Plaintiff's failure to exhaust is not curable.

Coleman knew or should have known that Haiderer was unqualified to assess Plaintiff's eye condition. (ECF No. 1, PageID.26, ¶ 34, PageID.33, ¶ 58).

Defendants argue that Plaintiff's Certified Grievance Records show "no grievances filed during this timeframe as alleged in [the] Complaint." (ECF No. 25, PageID.115). But as discussed above, in response to the motion, Plaintiff has provided a March 23, 2021 Step I Grievance Identifier SRF 2021 03-0409-28a which states that Brown, along with Haiderer, McCauley, and "Corizon ACMO unknown" intentionally deprived him of medical necessary contact lenses. (*Id.* at PageID.200). Plaintiff argues that "Corizon ACMO unknown" was used "as a place holder" until Coleman could be identified by name. (*Id*. at PageID.196). In reply, Defendants state that they were not made aware of Grievance Identifier SRF 2021 03-0409-28a until receiving Plaintiff's response to the motion, but argue that the claim is unexhausted due to Plaintiff's failure to appeal the grievance to Steps II and III, "[e]ven assuming *arguendo*" that the grievance was improperly rejected as duplicative of an earlier grievance. (ECF No. 39, PageID.231-232).

Plaintiff's Step I submission in SRF 2021 03-0409-28a is not sufficient to exhaust his administrative remedies against Coleman. Accepting Plaintiff's argument that "Corizon ACMO unknown" was sufficient to identify Coleman, the Step I submission sets forth claims against Coleman consistent with the Complaint's allegations: Coleman was aware that a previous medical source recommended the use of contact lenses and that eyeglasses did not correct the vision problems but nonetheless denied the request for a contact lens fitting to save money. (ECF No. 36, PageID.200).

13

However, as discussed above, Plaintiff's argument that the Step I submission, without more, was sufficient to put Coleman on "fair notice" of the claims against him stands directly at odds with P.D. 03.02.130, ¶ ¶ DD, HH which require a prisoner to pursue his administrative remedies through Step III of the grievance process before filing suit. Likewise, Plaintiff's contention that the further remedies were "unavailable" after the grievance was rejected as duplicative at Step I is without merit. *See Rhinehart,* 2011 WL 679699, at *5 (citing *See Booth,* 532 U.S. at 741 n.6); *Taylor*, 2021 WL 7448513, at *5 ; *Russell,* 2020 WL 6498910, at *2. Plaintiff's argument on this point is particularly specious given that he has appealed at least one other initially "rejected" grievance to Step III in the last two years. (ECF No. 25-1, PageID.144-145). For these reasons, the claims against Coleman should be dismissed without prejudice.

### E. Conclusion

For the following reasons, For the following reasons, **I RECOMMEND** that this Court **GRANT** Defendants Rickey Coleman, D.O. and Laura Brown, N.P.'s motion for summary judgment on the basis of exhaustion, dismissing claims against both **WITHOUT PREJUDICE**. (ECF No. 25).

### III. REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections

14

constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this R&R. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this R&R to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: May 17, 2022                                                    S/ PATRICIA T. MORRIS
                                                                      Patricia T. Morris
                                                                      United States Magistrate Judge

15