**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

DAVID BROWN,

*Plaintiff,*

*v.*

DR. DONALD HAIDERER,
SUSAN McCAULEY,
RICKEY COLEMAN, and
LAURA BROWN,

*Defendants.*
______________________________________/

CASE NO. 4:21-cv-11565
DISTRICT JUDGE MATTHEW F. LEITMAN
MAGISTRATE JUDGE PATRICIA T. MORRIS

**REPORT AND RECOMMENDATION ON MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 58, 60)**

## I. RECOMMENDATION

For the following reasons, **I RECOMMEND** the following:

1. That the Court **DENY** Defendant Dr. Donald Haiderer's Motion for Summary Judgment as to Plaintiff's Eighth Amendment Deliberate Indifference claim and his First Amendment Retaliation claim, and **GRANT** the motion as to all other claims. (ECF No. 58).

2. That the Court **GRANT** Susan McCauley's Motion to Dismiss and/or Summary Judgment (ECF No. 60).

## II. REPORT

### A. Background

On June 21, 2021, Plaintiff David Brown, a Michigan Department of Corrections ("MDOC") prisoner housed at the G. Robert Cotton Facility ("JCF") in Jackson, Michigan, filed suit in this Court, alleging violations of his First and Eighth Amendment rights under 42 U.S.C. § 1983; violations of the Americans with Disability Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*; and the Rehabilitation Act ("RA"), 29 U.S.C. § 794, *et seq.*

#### 1. Plaintiff's Complaint

The Complaint contains the following factual allegations.

Plaintiff requested the replacement of corrective contact lenses (ZenLenses) which were lost during a prisoner transfer. (ECF No. 1, PageID.16, ¶¶ 1-3). Before he could obtain the replacement lenses, he was again transferred, this time to the Saginaw Correctional Facility ("SRF"). Plaintiff made optometrist Defendant Donald Haiderer, O.D. aware of medical records dating back to 2006 showing that these contact lenses were "the best option." (*Id.* at PageID.16-17, ¶¶ 3, 5-6).[1] Plaintiff informed Haiderer that the vision correction was required for reading, cleaning, and participating in services, programs, and other activities. (*Id.* at

---

[1] It is unclear whether Plaintiff notified Haiderer of the medical history and asked for accommodations for the vision impairment prior to or during Haiderer's examination.

PageID.17, ¶ 3). Haiderer refused Plaintiff's requests for the medical accommodations of ramps, access to elevators, a handicap cell, and assistance with reading and writing. (*Id.* ¶ 4). Plaintiff did not receive an eye examination until one year after the request, and in the meantime experienced blackouts, dizziness, blurred vision, and shooting pain in both eyes. (*Id.*). During the eye exam by Haiderer, Plaintiff reported migraine headaches and dizzy spells due to lack of vision correction. (*Id.* ¶ 5). Haiderer refused to submit a referral for a contact lens fitting, but instead gave him a prescription for eyeglasses. (*Id.*). Plaintiff alleges that Haiderer intentionally disregarded the earlier medical records showing the need for contact lenses and falsely stated in his own records that Plaintiff was malingering. (*Id.* at PageID.18, ¶¶ 7-10). At a later eye examination in 2021 in which Plaintiff was unable to read even the top line of the eye chart, Haiderer again refused to make a referral for a contact lens fitting, telling Plaintiff to "either accept eyeglasses or nothing." (*Id.* at PageID.19, ¶ 12).

Plaintiff informed Defendant Laura Brown, N.P.[2] that his vision was deteriorating and requested an eye examination and fitting for contact lenses. (*Id.* at PageID.19-20, ¶ 14). In response, Brown submitted a referral for a contact lens fitting. (*Id.* at PageID.20, ¶ 14). But when Haiderer learned of the referral, he

[2] While the Complaint refers to non-dismissed Defendant Brown as a physician's assistant, she was later identified as a nurse practitioner. (ECF No. 25, PageID.114).

scheduled his own examination and instead recommended the use of eyeglasses. (*Id.* at ¶¶ 14-15). Plaintiff alleges that Haiderer deliberately prevented him from obtaining an evaluation and fitting for the medically necessary contact lenses after Plaintiff filed a grievance against him. (*Id.* at PageID.20-22, ¶¶ 15-25).

Plaintiff also alleges that Defendant McCauley, SRF's Health Unit Manager ("HUM"), was aware of his medical history but instead of providing a referral for a contact lens fitting, scheduled an appointment with Dr. Haiderer, whom she was aware was not qualified to perform an adequate evaluation of the eye condition. (*Id.* at PageID.24-30, ¶¶ 27-33, 35-49).

Now-dismissed Defendant Rickey Coleman, an employee of Corizon, MDOC's health care provider, instructed Haiderer to deny the request for contact lenses. (*Id.* at PageID.26, ¶ 34). Plaintiff alleges that Coleman knew or should have known that Haiderer was unqualified to assess Plaintiff's eye condition. (*Id.* at PageID.33, ¶ 58). As to Brown, the Complaint states that Brown "refused to correct" Haiderer and McCauley's determination that contact lenses were not a medical necessity despite Brown's awareness of the headaches, loss of balance, and blurred vision caused by the lack of vision correction. (*Id.* at PageID.31, ¶¶ 50-51). In response to several kites requesting a referral for a contact lens fitting, Brown refused, stating that she did not want to get involved any further, although she continued to treat Plaintiff for headaches caused by vision problems. (*Id.* at

PageID.31-33, ¶¶ 52-57). Plaintiff alleges that she changed his medication to "cover up" the headaches and loss of balance brought on by blurred vision. (*Id*. at PageID.31, ¶ 51).

Plaintiff brings an Eighth Amendment claim of deliberate indifference to his serious medical needs, a First Amendment retaliation claim, and an ADA/RA claim against Defendant Dr. Haiderer. He brings an Eighth Amendment claim, a First Amendment retaliation claim, and arguably an ADA/RA claim against Defendant McCauly.

Plaintiff requests monetary damages.

**2. Defendant Haiderer's Exhibits**

Defendant Dr. Haiderer has submitted the following exhibits with his motion:

Attachment A is a memo from the medical secretary for ICF to DRF Health Care, dated June 25, 2015, recounting Plaintiff's complaints regarding his contact lenses. (ECF No. 58-2, PageID.339).

Attachment B is a treatment note by Dr. Helios Tin-Chung Leung, D.O., Ph.D., from the University of Michigan Kellogg Eye Center, dated June 5, 2019. Dr. Leung diagnosed Plaintiff with keratoconus and extreme light sensitivity. He stated that "[i]t was documented that PROSE[3] did not significantly improve [Plaintiff's]

[3] Prosthetic Replacement of the Ocular Surface Ecosystem. "PROSE devices are transparent domes about the size of a nickel that are worn in the eyes daily and removed at night. They rest on the sclera (the white part of your eye) and over-not on-the cornea.

vision," but instructed Plaintiff to wear sunglasses over ZenLenses.[4] (ECF No. 58-3, PageID.341).

Attachment C is Dr. Leung's treatment note dated August 7, 2019, again indicating his belief that PROSE would not "provide a satisfactory solution to [Plaintiff's] visual problems," and noting that Plaintiff had used traditional contact lenses for the past two months without success. He determined that Plaintiff "will return to ZenLens." (ECF 58-4, PageID.343).

Attachment F is a treatment note from PA David Brown at the MDOC health facility, dated December 16, 2019. PA Brown noted Plaintiff's complaint of photo sensitivity and ocular pain. Plaintiff's request for contact lens re-fit was denied, and

---

This creates a smooth surface over the distorted, damaged, or diseased cornea. PROSE devices are made of gas-permeable material and must be filled with preservative-free saline solution each day before they are applied." DukeHealth, PROSE (Prosthetic Replacement of the Ocular Surface Ecosystem) Treatment www.dukehealth.org>prose (last visited 3/15/23, 7:43 p.m.).

[4] ZenLenses are scleral lenses, which rest on the whites of the eyes (the sclera) rather than on the cornea. "Scleral contact lenses are made of gas-permeable material. They allow oxygen to pass through to your cornea. Scleral lenses are valuable if your corneas are abnormally shaped, as in astigmatism and keratoconus." https://www.webmd.com/eye-health/what-to-know-about-scleral-contact-lenses (last visited March 13, 2023). Moreover, "scleral lenses can morph an irregular cornea into a smooth optical surface to correct vision problems caused by keratoconus and other forms of corneal ectasia. Furthermore, the space between the cornea and the back of the scleral lens acts as a fluid reservoir, continuously bathing the cornea. This can provide relief for people with severe ocular surface disease and may help the ocular surface to heal." American Academy of Ophthalmology, Update on Scleral Lenses, Gabrielle Weiner. https://www.aao.org/eyenet/article/update-on-scleral-lenses (last visited March 13, 2023).

Plaintiff refused bifocals. (ECF No. 58-7, PageID.350).  He stated his impression that Plaintiff was "malingering" and "generally uncooperative," and wrote that no treatment was planned at this time. (*Id*. at PageID.352).

Attachment G are MDOC notes by Laura Brown, NP, dated February 16, 2021.  She states that she discussed the Plaintiff's case with Dr. Haiderer, who recommended bifocals as an alternative to ZenLens contact lenses.  She noted that Dr. Leung from the Kellogg Institute prescribed ZenLens contacts and sunglasses. She said that Dr. Haiderer denied the request for ZenLens contacts even though Kellogg "advised Rigid Gas Permeable contacts instead of glasses."  Dr. Haiderer said that Plaintiff had a "poor history of compliance," and that these contact lenses were expensive.  Dr. Haiderer said that the contact lenses were not a medical necessity. (ECF No. 58-8, PageID.355).

Attachment H is a note from NP Brown dated February 18, 2021, noting that Plaintiff had tried bifocals in the past with no success, but was "agreeable to try them again." (ECF No. 58-9, PageID.357).

Attachment I is a treatment note from Dr. Haiderer dated March 9, 2021.  He noted that on February 10, 2021, the Kellogg Center "requested refit with ZenLens RGP due to keratoconus (mild) diagnosis." (ECF No. 58-10, PageID.359).  He referred to Plaintiff's past failures with contact lenses due to comfort and lost lenses,

and stated, "He is malingering his vision deficit." He added that Plaintiff has "poor potential for successful contact lens wear in corrections." (*Id.*)

Attachment J is a note by Dr. Haiderer, dated June 14, 2021, stating that Plaintiff refused glasses except for those worn over contact lenses. He opines that Plaintiff is an "obvious malingerer" who is clearly not "blind" because he was easily able to pick up a piece of paper that he had dropped. (ECF No. 58-11, PageID.361).

**3. Defendant McCauley's Exhibits**

Defendant McCauley states as follows in the declaration she has submitted with her motion. She is the Health Unit Manager at the Saginaw Correctional Facility. (ECF No. 60-4, PageID.425). She is not responsible for overseeing medical decisions, medical purchases, or medical requests, nor is she responsible for approving off-site visits to specialists. (*Id*. at PageID.426). Rather, she states, "All decisions regarding course of treatment are approved by on-site medical providers." (*Id.*) As an HUM and a nurse, she cannot create treatment plans, diagnose, or treat medical conditions. She is not a doctor and cannot approve, deny, or provide contact lenses. (*Id*. at PageID.427). She does not have supervisory authority over Dr. Haiderer. (*Id.*) She did not have the authority to order Plaintiff to see an off-site specialist for Plaintiff or to order contacts for him. (*Id*. at PageID.428).

**4. Plaintiff's Exhibits**

Plaintiff has submitted the following exhibits with his responses:

**a. ECF No. 62**

Exhibit 2 to his response to Dr. Haiderer's motion is a treatment note by Dr. Leung of the Kellogg Center, dated July 1, 2022. Dr. Leung states that Plaintiff suffers from keratoconus, which he defines as "a progressive degenerative condition characterized by thinning and irregularity of the central cornea, causing blurred and distorted vision as well as light sensitivity." (ECF No. 62, PageID.456). Regarding the unsuitability of glasses, Dr. Leung states, "It is not possible for glasses to provide clear vision due to the irregularity in the cornea. Special gas permeable contact lenses are needed to provide the best vision. Therefore, the contact lenses should be considered medically necessary." (*Id.*) He also states that because of light sensitivity, Plaintiff should be permitted to wear sunglasses over the contacts. (*Id.*)

Exhibit 3 is a note from Dr. Leung dated October 5, 2022, in which he again states that the contact lenses are medically necessary. He also states that Plaintiff requires +2.50 reading glasses over the contacts for close vision. (*Id.* at PageID.451).

Exhibit 5 is a treatment note from Dr. Christopher Hood, M.D., of the Kellogg Institute, dated August 7, 2018. Dr. Hood notes that Plaintiff cannot tolerate "standard" contact lenses because of advanced keratoconus, not because of non-compliance. (*Id.* at PageID.459).

Exhibit 6, is Dr. Leung's prescription for ZenLens contact lenses, dated October 5, 2022. (*Id*. at PageID.460).

Exhibit 7 is a treatment note from Dr. Leung, dated February 10, 2021. Dr. Leung states that Plaintiff was fitted for ZenLens contacts in 2019, and was getting used to them when he lost them. He noted "good fit, vision, reasonable comfort with ZenLens," and again prescribed these contacts. (*Id*. at PageID.461).

Exhibit 13 is a treatment note from Dr. Leung dated April 17, 2019. He states that Plaintiff had worn Europa and Synerg Eyes contacts, but they were uncomfortable. On the other hand, he said, the ZenLens contacts were a good fit and Plaintiff's vision was greatly improved. Plaintiff was willing to proceed with ZenLens, and Dr. Leung prescribed them. (*Id*. at PageID.468).

Exhibit 14 is a treatment note from Dr. Hood of the Kellogg Center, dated February 4, 2022. Dr. Hood notes that Plaintiff has moderate keratoconus, bilateral, as well as a corneal scar on the left eye and moderate glaucoma of both eyes. (*Id*. at PageID.469. He further states that Plaintiff has difficulty tolerating "hard contacts," but "was able to tolerate scleral lens rather than semi scleral lens in the past." (*Id*.)

**b. ECF No. 63**

Plaintiff's Exhibits to Defendant McCauley's motion are not clearly labeled. For example, he lists ECF No. 63, PageID.483 *and* PageID.486 as Exhibit 1. To avoid confusion, the Exhibits are referenced page identification number.

Plaintiff includes a September 29, 2020 grievance stating that nine days earlier, "McCauley and Hairderer intentionally decide[d] not to submit" a request for an offsite contact lens fitting. (ECF No. 63, PageID.483). On June 3, 2021, McCauley responded to Plaintiff's request for an offsite examination, stating that Plaintiff was "just seen by Dr. Haiderer on 5-17-2021." (*Id*. at PageID.486). The next Exhibit is McCauley's June 22, 2021 response to Plaintiff's report of blurred vision and spots in front of his vision which states that Plaintiff had just been seen on June 14, 2021 and was scheduled for a December 2021 follow up. (*Id*. at PageID.487).

February 2, 2017 MDOC medical records by Gerald W. Kolk, O.D. note that Plaintiff could see "great with the combination of [contact lenses] and glasses over top" and "IN NO WAY" qualified for a visual disability. (*Id*. at PageID.491). MDOC records state that as of January 14, 2020, Plaintiff, currently prescribed contact lenses, required assistance with reading and writing and was deemed visually impaired. (*Id.* at PageID.492). An October 5, 2022 MDOC "medical detail" record shows that as of that day, Plaintiff was prescribed contact lenses and a white cane. (*Id*. at PageID.494).

**B. Summary Judgment Standard**

A court will grant a party's motion for summary judgment when the movant shows that "no genuine dispute as to any material fact" exists. Fed. R. Civ. P. 56(a).

In reviewing the motion, the court must view all facts and inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party bears "the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986)) (internal quotation marks omitted). In making its determination, a court may consider the plausibility of the movant's evidence. *Matsushita*, 475 U.S. at 587-88. Summary judgment is also proper when the moving party shows that the non-moving party cannot meet its burden of proof. *Celotex*, 477 U.S. at 325.

The non-moving party cannot merely rest on the pleadings in response to a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993). The non-movant cannot withhold evidence until trial or rely on speculative possibilities that material issues of fact will appear later. 10B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2739 (3d ed. 1998). "[T]o withstand a properly supported motion for summary judgment, the non-moving party must identify specific facts and affirmative evidence that contradict those

offered by the moving party." *Cosmas v. Am. Express Centurion Bank*, 757 F. Supp. 2d 489, 492 (D. N.J. 2010). In doing so, the non-moving party cannot simply assert that the other side's evidence lacks credibility. *Id.* at 493. And while a pro se party's arguments are entitled to liberal construction, "this liberal standard does not ... 'relieve [the party] of his duty to meet the requirements necessary to defeat a motion for summary judgment.'" *Veloz v. New York*, 339 F. Supp. 2d 505, 513 (S.D.N.Y. 2004) (quoting *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003)). "[A] pro se party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D. N.Y. 1995) (quoting *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

After examining the evidence designated by the parties, the court then determines "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). Summary judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

**C. Analysis**

**1. The Eighth Amendment Claim**

**a. Legal Principles**

Under the Eighth Amendment, prisoners have a constitutional right to medical care. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). Prison officials may not act with deliberate indifference to the medical needs of their prisoners. *Id.* at 104. An Eighth Amendment claim has two components, one objective and the other subjective. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2002). Under the objective component, "the plaintiff must allege that the medical need at issue is 'sufficiently serious.'" *Id*. A plaintiff can "establish the objective component by showing that the prison ... provided treatment 'so cursory as to amount to no treatment at all.'" *Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018) (quoting *Dominguez v. Correctional Med. Servs.*, 555 F.3d 543, 551 (6th Cir. 2009)).

The subjective component requires that the defendant act with deliberate indifference to an inmate's health or safety. *Farmer*, 511 U.S. at 834. Deliberate indifference "entails something more than mere negligence," *id.* at 835, but can be "satisfied by something less than acts or omissions for the very

purpose of causing harm or with knowledge that harm will result." *Id.* To establish the subjective component, "the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded the risk." *Id.* at 837. Deliberate indifference may be established by showing an interruption of a prescribed plan of treatment, or a delay in medical treatment. *Id.*; *Caldwell v. Moore*, 968 F.2d 595, 602 (6th Cir. 1992).

**b. Dr. Donald Haiderer (ECF No. 58)**

Defendant Dr. Haiderer argues that Plaintiff's Eighth Amendment claim fails because it amounts to no more than a disagreement over medical treatment rather than deliberate indifference. (ECF No. 58, PageID.333-334). He argues that Plaintiff's claims "sound exclusively in medical malpractice," and are dismissible because Plaintiff failed to comply with the Michigan procedural requirements for such claim. (*Id*. at PageID.320).

As to the objective component of the Eighth Amendment claim, it is not in dispute that Plaintiff suffers from keratoconus, which Dr. Leung described as "a progressive degenerative condition characterized by thinning and irregularity of the central cornea, causing blurred and distorted vision as well as light sensitivity." (ECF No. 62, PageID.456). The Plaintiff has proffered exhibits showing that doctors from the Kellogg Center characterized the condition alternately as "advanced" and

"moderate." (ECF No. 62, PageID.459, 469). Plaintiff has shown a sufficiently serious condition to satisfy the objective prong.

As to the subjective component, it is not disputed that Dr. Haiderer perceived and recognized that Plaintiff suffered from keratoconus, and drew the inference that Plaintiff required treatment for that condition. The question is whether there is sufficient evidence in the record from which a trier of fact could find that Dr. Haiderer was deliberately indifferent to the risk posed by Plaintiff's condition. In other words, did Dr. Haiderer's treatment protocol rise above a level of mere negligence to an Eight Amendment violation?

Dr. Haiderer argues that Plaintiff's complaint amounts to no more than Plaintiff's own disagreement with his medical judgment. But the exhibits show more than that; Dr. Haiderer also disagreed with the clinical judgment of the doctors at the Kellogg Center, principally Dr. Leung, regarding whether Plaintiff should be provided with the gas permeable ZenLenses. And while in general, a disagreement between doctors would not support an Eighth Amendment violation, here there is evidence in the record that Dr. Haiderer's reasons for declining to fill Dr. Leung's prescription for ZenLenses, in favor of bifocals that Dr. Leung opined would be ineffective, were not based on sound medical judgment, but on his annoyance with what he perceived to be Plaintiff's uncooperative attitude and malingering.

On February 16, 2021, Dr. Haiderer acknowledged to NP Laura Brown that Dr. Leung had prescribed ZenLens contacts as well as sunglasses for light sensitivity. (ECF No. 58-8, PageID.355). He denied that request, instead recommending bifocals, even though the Kellogg Center "advised Rigid Gas Permeable contacts instead of glasses." (*Id.*). Dr. Haiderer opined that Plaintiff had "a poor history of compliance," and that the ZenLens contacts were expensive. (*Id*). On March 9, 2021 he again noted that the Kellogg Center had requested that Plaintiff be refitted with ZenLenses due to what Dr. Haiderer incorrectly characterized as their diagnosis of "mild" keratoconus. (ECF No. 58-10, PageID.359).[5] He noted Plaintiff's past failures with contact lenses due to comfort and lost lenses, and stated that Plaintiff was "malingering his vision deficit." He said that Plaintiff had "refused bifocal glasses" and had a "poor potential for successful contact lens wear in corrections." (*Id.*)

Dr. Haiderer also opined on June 14, 2021, that Plaintiff was malingering because although he claimed he was "blind," he was able to easily find and pick up a piece of paper he had dropped on the floor. (ECF No. 58-11, PageID.361).

These reasons for refusing to refit Plaintiff with the gas permeable ZenLenses are unpersuasive. First, as to Plaintiff being unsatisfied with standard, non-gas

[5] Notes from the Kellogg Center refer to Plaintiff's keratoconus as "moderate" (ECF No. 62, PageID.469) or "advanced." (*Id*. at PageID.459).

permeable contacts, or having lost them in the past, there is no evidence in the record that such contacts were effective. As early as August 7, 2018, Dr. Christopher Hood from the Kellogg Center wrote that Plaintiff could not tolerate "standard" contacts because of *advanced* keratoconus, not because of simple non-compliance. (ECF No. 62, PageID.459). Likewise, on July 1, 2022, Dr. Leung stated, "It is not possible for glasses to provide clear vision due to the irregularity in the cornea. Special gas permeable contact lenses are needed to provide the best vision. Therefore, the contact lenses should be considered medically necessary." (*Id*. at PageID.456). And while glasses and standard contacts had proved ineffective, Plaintiff had previously been fitted with ZenLenses in 2019 and they worked well. On February 10, 2021, Dr. Leung noted that Plaintiff was getting used to the lenses when he lost them. Dr. Leung wrote, "Good fit, vision, reasonable comfort with Zenlens," and prescribed replacements. (*Id*. at PageID.461).

To the extent that Plaintiff was "noncompliant," he was noncompliant with the use of standard contacts and glasses that were not only subjectively uncomfortable and ineffective, but which were deemed such by doctors at the Kellogg Center. And as far as Plaintiff having "repeatedly" lost previous contact lenses, the evidence shows that he lost the gas permeable ZenLenses only once, during a transport from the Kellogg Center.

Finally, Dr. Haiderer's characterization of Plaintiff as malingering appears to be based on Plaintiff overstating his vision problems, saying that he was effectively "blind." But Plaintiff's hyperbole is beside the point; there is no question that he has been diagnosed with bilateral keratoconus, and that he suffers vision defects as a result. This is true regardless of whether he can pick up a piece of paper from the floor or whether he exaggerates his symptoms. He is merely asking for gas permeable contact lenses that work, not a seeing eye dog.

Dr. Haiderer argues that at most, Plaintiff has raised a claim of mere negligence, and he is correct that medical malpractice in and of itself does not rise to the level of an Eighth Amendment violation.[6] *See Estelle*, 429 U.S. at 105–106

[6] Dr. Haiderer argues that "Brown's claims sound in medical malpractice but he failed to comply with the [Michigan] statutory prerequisites" for medical malpractice cases (ECF No. 58, PageID.327). Those prerequisites are a written pre-suit notice to the defendant, MCL 600.2912b(1), and the filing of an affidavit of merit with the complaint, M.C.L. § 600.2912d(1). He presents no substantive arguments regarding alleged malpractice, but instead relies on the procedural bar to what he contends is Plaintiff's medical negligence claim. However, in his reply, Plaintiff's complaint is properly construed as challenging Dr. Haiderer's actions under the Eighth Amendment, and Plaintiff affirmatively states in his response to this motion that he is claiming only an Eighth Amendment violation, not medical malpractice: "Plaintiff is not arguing under the malpractice. Plaintiff claims are sound in the Eighth Amendment and Fourteenth Amendment due process and ADA Act 1990 RA 50b 1973." (ECF No. 62, PageID.449). While he does refer to Dr. Haiderer's alleged negligence and breach of the applicable standard of care, *id*., the gravamen of his claim, and his own clear characterization of his claim, centers on the Eighth Amendment.

I note, however, that if Plaintiff *had* raised a malpractice claim in this case, Dr. Haiderer's argument that it would be procedurally barred is incorrect. In *Albright v. Christensen*, 24 F.4th 1039, 1042 (6th Cir. 2022), the Sixth Circuit, applying *Hanna v. Plumer*, 380 U.S. 460 (1965), found that because the Michigan procedural rules in malpractice cases conflict with the Federal Rules of Civil Procedure, they do not apply in diversity

("a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner"). But in this case, there is a question of fact as to whether Dr. Haiderer's decision to forego effective treatment went beyond mere negligence. In *Atchison v. Cruz*, No. 10-10545, 2011 WL 893096, at *5 (E.D. Mich. Jan. 24, 2011) (Whalen, M.J.), *report and recommendation adopted sub nom. Atchison v. Sta. Cruz*, No. 10-10545, 2011 WL 900305 (E.D. Mich. Mar. 14, 2011) (Rosen, C.J.), the Court stressed that the question of whether a medical decision was so beyond professional standards as to constitute deliberate indifference can create a disputed issue of fact regarding the quality of care:

> However, deliberate indifference is not restricted to cases where there is a complete absence of care, and the fact that an inmate receives *some* level of medical attention does not preclude constitutional scrutiny of the quality of that care. That assessment necessitates a factual inquiry. In *Waldrop v. Evans,* 871 F.2d 1030, 1035

---

cases in federal court. The Court concluded, "Pursuant to *Hanna*, we hold that Michigan's affidavit-of-merit and presuit-notice requirements in diversity cases do not apply in the federal courts." *Id*. at 1049. Of course, the present case is not a diversity case. However, in *Wilson v. Blue*, No. 1:22-CV-359, 2022 WL 3224456, at *6 (W.D. Mich. Aug. 10, 2022)(Jarbou, J.), the Court noted that "[a]lthough jurisdiction in Plaintiff's case does not depend on diversity of citizenship, '[a] federal court exercising supplemental jurisdiction over state law claims is bound to apply the law of the forum state to the same extent as if it were exercising its diversity jurisdiction.'" (Quoting *Super Sulky, Inc. v. Trotting Ass'n*, 174 F.3d 733, 741 (6th Cir. 1999). The Court therefore held "that Plaintiff's state law tort claims cannot be dismissed for failure to comply with the 'affidavit of merit' requirement." *Id*. The Court nevertheless exercised its discretion to decline supplemental jurisdiction, dismissing the malpractice claim without prejudice.

> (11th Cir.1989), the issue was whether "decisions to remove [the prisoner] from medication and to restore the medication without Lithium constituted deliberate indifference to [his] psychiatric condition." Affirming a denial of summary judgment, the Eleventh Circuit stated, "We cannot determine ... whether [the doctor's] treatment constituted deliberate indifference to Waldrop's serious psychiatric needs because that treatment must be evaluated according to professional standards," and thus "there is a disputed issue of material fact regarding the quality of care ... provided to [the prisoner]." *Id.* *Waldrop* relied in part on *Rogers v. Evans,* 792 F.2d 1052, 1058 (11th Cir.1986), where the Court held that "[w]hether an instance of medical misdiagnosis resulted from deliberate indifference or negligence is a factual question requiring exploration by expert witnesses." (Emphasis in original).

In *Terrance v. Northville Regional Psychiatric Hosp.,* 286 F.3d 834, 844 (6th Cir. 2002), an Eighth Amendment deliberate indifference case, the Sixth Circuit relied on *Waldrop* in reversing a grant of summary judgment:

> The [*Waldrop* ] court stated that the relevant inquiry as to whether the defendants provided grossly inadequate care was "whether a reasonable doctor ... could have concluded his actions were lawful." *Id.* at 1034. In *Waldrop,* the court affirmed the denial of defendants' motion for summary judgment in a § 1983 action finding that a particularized, fact-specific inquiry was a necessity to the proper analysis of plaintiff's claim. Here, as in that case, the proper analysis of Terrance's claim requires a similar inquiry.

Viewing this case, as we must, in the light most favorable to the Plaintiff, there is evidence from which a trier of fact could conclude that Dr. Haiderer's refused to provide effective treatment (ZenLenses) for keratoconus and extreme light sensitivity based not on his sound medical judgment, but on his annoyance with the Plaintiff. If that were the case, then the jury could also find that Dr. Haiderer' actions

departed enough from professional standards that they greatly exceeded mere negligence, and constituted deliberate indifference to Plaintiff's serious medical needs, in violation of the Eighth Amendment. Because there is a "disputed issue of material fact regarding the quality of care" afforded to Plaintiff, summary judgment should be denied as to the Eighth Amendment claim. *Waldrop*, 871 F.2d at 1035.

**c. Defendant McCauley**

Plaintiff alleges that McCauley, the HUM, was deliberately indifferent to his medical needs because she "knowingly and willingly" failed to "correct" Dr. Haiderer from interfering with his treatment; that she knew or should have known the "relevant standard of care" and that Dr. Haiderer had the duty to refer him to a specialist, and that she knew that Dr. Haiderer was negligent. (ECF No. 1, PageID.25). Plaintiff also alleges that McCauley improperly referred him to Dr. Haiderer for an eye exam. (*Id*. at PageID.29).

The plaintiff in a § 1983 case must show that a named defendant was personally involved in the allegations underlying the complaint. *Rizzo v. Goode*, 423 U.S. 362, 372 (1976); *Bellamy v. Bradley*, 729 F.2d 416 (6th Cir. 1984). Section 1983 liability "must be based on more than *respondeat superior*, or the right to control employees." *Shehee v. Lutrell*, 199 F.3d 295, 300 (6th Cir. 1999); *see also Skinner v. Govorchin*, 463 F.3d 518, 525-26 (6th Cir. 2006) ("there is no *respondeat superior* liability under § 1983); *Leach v. Shelby Cty. Sheriff*, 891 F.2d

1241, 1246 (6th Cir. 1989) (Supervisory officials are personally liable in damages only for their own unconstitutional behavior). Moreover, being aware of an inmate's complaint and failing to take action does not create liability under § 1983. *Poe v. Haydon*, 853 F.2d 418, 429 (6th Cir. 1988).

McCauley's declaration makes clear that as an HUM, she was not personally involved in Plaintiff's health care, and that she does not have the authority to order off-site visits to specialists, to create treatment plans, or to diagnose medical conditions. She specifically stated that she is not a doctor and cannot approve, deny, or provide contact lenses. She has no supervisory authority over Dr. Haiderer. (ECF No. 60-4, PageID.426-427).

The decisions within the MDOC regarding treatment for Plaintiff's eye condition were made by Dr. Haiderer. Because Defendant McCauley had no personal involvement in Plaintiff's treatment, she is entitled to summary judgment on the Eighth Amendment claim.[7]

---

[7] To the extent that Plaintiff bases his claim on the allegation that McCauley interviewed him on his grievance against Dr. Haiderer (ECF No. 1, PageID.24), he fails for two reasons. First, McCauley makes clear in her declaration that she is not a designated grievance respondent and is not responsible for interviewing prisoners on grievances. (ECF No. 60-4, PageID.426). Second, even if she had been a grievance respondent, that is insufficient personal involvement to support a § 1983 claim. *See Shehee v. Lutrell*, 199 F.3d at 300; *Lee v. Mich. Parole Bd*., 104 F. App'x 490, 493 (6th Cir. 2003).

**2. Retaliation**

**a. Dr. Haiderer**

In *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999), the Sixth Circuit held that a retaliation claim has three elements: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two-that is, the adverse action was motivated at least in part by the plaintiff's protected conduct."

In his complaint, Plaintiff alleges that Dr. Haiderer told him that he should not have filed a grievance against him or "gone behind his back" to get contact lenses, and that Dr. Haiderer denied his request for contact lenses in retaliation. (ECF No. 1, PageID.23). For pleading purposes, this makes out the elements of a retaliation claim. Plaintiff's First Amendment protected conduct was filing the grievance against Dr. Haiderer; the adverse action was the alleged Eighth Amendment violation; and the temporal connection between the two establishes causality.

Defendant Haiderer does not challenge the Plaintiff's retaliation claim in either his motion or his reply brief. Nor has he submitted his own declaration. He has therefore waived a challenge to the retaliation issue. "Courts have held that while the Magistrate Judge Act, 28 U.S.C. § 631 *et seq.*, permits *de novo* review by the district court if timely objections are filed, absent compelling reasons, it does not

allow parties to raise at the district court stage new arguments or issues that were not presented to the magistrate [judge]….Hence, Petitioner's failure to raise this claim before the magistrate [judge] constitutes waiver." *Murr v. United States*, 200 F.3d 895, 902, fn. 1 (6th Cir. 2000) (internal citations omitted); *see also King v. Zamiara*, No. 4:02-CV-141, 2009 WL 1067317, at *1 (W.D. Mich. Apr. 21, 2009) ("Because Defendants failed to raise this argument before the Magistrate Judge [in a summary judgment motion], they will be deemed to have waived it.").

**b. Defendant McCauley**

Defendant McCauley challenges Plaintiff's retaliation claim for two reasons. First, she argues that under the *Thaddeus-X* test, Plaintiff was not exercising any protected conduct. Second, she argues that in any case, she would have taken the same action (or refrained from taking the same action) regardless of any retaliatory motive. (ECF No. 60, PageID.406-408).

Plaintiff alleges two incidents of alleged retaliation by McCauley. First, he alleges that her failure to "accommodate his visual needs" by referring him to Dr. Haiderer instead of following the directives of Dr. Leung of the Kellogg Center was an adverse action that was based on retaliatory motives. (ECF No. 1, PageID.28). Second, he alleges that McCauley "allowed Dr. Haiderer to deviate from Dr. Leung's recommendation which McCauley knew would result in further eye damage for Plaintiff," and that her actions "are retaliatory base[ed] solely on Plaintiff's visual

disability." (*Id.* at PageID.30). But while it might be argued that these are adverse actions, Plaintiff does not allege that he had engaged in any protected conduct or that McCauley's actions were connected to any of his protected conduct. He has therefore not met the third prong of *Thaddeus-X*.

In addition, even if Plaintiff had shown that McCauley's actions were preceded by and connected to his protected conduct, his retaliation claim would fail because McCauley has shown that she would have taken the same action - not countermanding Dr. Haiderer's treatment plan and following the directives of an outside doctor - regardless. In *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001), the Sixth Circuit held:

> Moreover, the plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). *If the plaintiff is able to make such a showing, the defendant then has the burden of showing that the same action would have been taken even absent the plaintiff's protected conduct.* (Emphasis added).

Defendant McCauley's declaration shows that she did not have the authority to approve off-site visits, to create treatment plans, to diagnose medical conditions, or to approve or provide contact lenses. Nor does she have supervisory authority over Dr. Haiderer. (ECF No. 60-4, PageID.426-427). McCauley is not a doctor, and Plaintiff himself stated in his complaint that McCauley "is not trained in the field of optometry" (ECF No. 1, PageID.28) and thus not qualified to comparatively evaluate

Dr. Haiderer's and Dr. Leung's clinical assessments or order a particular treatment. Whether there was a retaliatory motive or whether there was not, McCauley would have followed the same course of action. She is entitled to summary judgment on Plaintiff's retaliation claim.

**3. ADA / RA (Haiderer and McCauley)**

To the extent that Plaintiff brings claims under the ADA, 42 U.S.C. § 12131, or the RA, 29 U.S.C. § 794(a), against Defendants Haiderer and McCauley, those claims fail for two reasons.

Although the two statutes differ in their causation standards, courts frequently analyze claims under the Rehabilitation Act and Title II of the Americans with Disabilities Act together. *Id*. (citing *Doe v. Woodford Cnty. Bd. of Educ.*, 213 F.3d 921, 925 (6th Cir. 2000); *A.C. ex rel. J.C. v. Shelby Cnty. Bd. of Educ.*, 711 F.3d 687, 697 (6th Cir. 2013); *R.K. ex rel. J.K. v. Bd. of Educ. of Scott Cnty.*, 637 F. App'x 922, 924 (6th Cir. 2016) ("[T]he ADA and Rehabilitation Act cover largely the same ground.").

First, these Defendants may not be sued under either statute in their individual capacities. "Title II of the ADA does not ... provide for suit against a public official in his individual capacity." *Everson v. Leis*, 556 F.3d 484, 501 fn. 7 (6th Cir. 2009); *see also Williams v. McLemore*, 247 Fed.Appx. at 8 ("[T]he ADA does not provide for personal liability for defendants sued in their individual capacities."). Nor may

public employees be sued in their individual capacity under the RA. *See Lee v. Michigan Parole Bd.*, 104 Fed.Appx. 490, 493 (6th Cir. 2004); *Gohl ex rel. J.G. v. Livonia Pub. Sch.*, 134 F.Supp.2d 1066, 1072-73 (E.D. Mich. 2015).

Second, to the extent these Defendants are sued in their official capacities, neither the ADA nor the RA encompasses claims that are based on alleged deficiencies in medical care. In *Woods v. Washington*, 2023 WL 2494401 (W.D. Mich., March 14, 2023) (Jarbou, J.), the Court explained:

> Even if Plaintiff sued Defendants in their official capacity, however, his factual allegations fail to suggest that Defendants denied adequate medical treatment because of any disability that Plaintiff may suffer. As the United States Court of Appeals for the Second Circuit has explained, "[w]here the handicapping condition is related to the condition(s) to be treated, it will rarely, if ever, be possible to say...that a particular decision was 'discriminatory.'" *United States v. Univ. Hosp.* 729 F.2d 144, 157 (2d Cir. 1984). Indeed, that distinction explains why the ADA and the RA are not appropriate federal causes of action to challenge the sufficiency of medical treatment. *See, e.g.*, *Baldridge-El v. Gundy*, No. 99-2387, 2000 WL 1721014, at *2 (6th Cir. Nov. 8, 2000) ("[N]either the RA nor the ADA provide a cause of action for medical malpractice."); *Centaurs v. Haslam*, No. 14-5348, 2014 WL 12972238, at *1 (6th Cir. Oct. 2, 2014) ("Although [Plaintiff] may have a viable civil rights claim under 42 U.S.C. § 1983 for inadequate medical care, he has failed to state a prima facie case under the parameters of the ADA."); *Powell v. Columbus Medical Enterprises, LLC*, No. 21-3351, 2021 WL 8053886, at *2 (6th Cir. Dec. 13, 2021) ("This dissatisfaction necessarily sounds in medical malpractice, which, 'by itself, does not state a claim under the ADA.' "). Plaintiff, therefore, has failed to state claims against Defendants for violations of the ADA.

Defendants Haiderer and McCauley are therefore entitled to summary judgment on Plaintiff's ADA and RA claims.

**4. Other Official Capacity Claims**

Any other official capacity claims against these Defendants are barred by Eleventh Amendment immunity. Under the Eleventh Amendment, a State or an agency of a State is protected from a suit in federal court for monetary damages by sovereign immunity. *Alden v. Maine*, 527 U.S. 706, 713 (1999). Eleventh Amendment immunity extends to state officials or employees sued in their official capacities. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989); *Ernst v. Rising*, 427 F.3d 351, 358 (6th Cir. 2005). The MDOC is a state agency and is therefore entitled to sovereign immunity from Plaintiff's suit for monetary damages, as are Defendants Haiderer and McCauley as sued in their official capacities. *See Turnboe v. Stegal*, 324 F.3d 1270, 2000 WL 1679478, at * 2 (6th Cir. 2000) ("[T]he MDOC, as an arm of the State of Michigan, is entitled to sovereign immunity.").

**5. Exhaustion (Defendant McCauley)**

In addition to arguing the merits of the case, Defendant McCauley argues that Plaintiff failed to exhaust his administrative remedies as to the claims against her before filing suit, as required by 42 U.S.C. § 1997e(a). A dismissal for failure to exhaust is without prejudice. *Knuckles El v. Toombs*, 215 F.3d 640 (6th Cir. 2000), *abrogated on other grounds by Jones v. Bock*, 549 U.S. 199 (2007); *McCloy v. Correctional Medical Services*, 794 F.Supp.2d 743, 751 (E.D. Mich. 2011).

In this case, the claims against McCauley are dismissible on the merits. "Under certain circumstances, a district court may, notwithstanding failure to exhaust, proceed to the merits of the claim and dismiss with prejudice if it concludes a party would be unsuccessful even absent the exhaustion issue." *Fitzgerald v. Corrections Corp. of America,* 403 F.3d 1134, 1139-40 (10th Cir.2005); *see also Mitchell v. Barbier*, 2009 WL 559866, at *1 (W.D. Mich. Mar. 4, 2009) (Jonker, J.) ("Regardless of whether Plaintiff properly exhausted his grievances, Defendants are entitled to judgment as a matter of law, and the case must be dismissed.") (Citing *Fitzgerald*, 403 F.3d at 1139–40).

Here, Defendant McCauley is clearly entitled to summary judgment on the merits. Accordingly, it is unnecessary to address the exhaustion issue, and she should be dismissed with prejudice.

**D. Conclusion**

For these reasons, **I RECOMMEND** the following:

1. That the Court **DENY** Defendant Dr. Donald Haiderer's Motion for Summary Judgment as to Plaintiff's Eighth Amendment Deliberate Indifference claim and his First Amendment Retaliation claim, and **GRANT** the motion as to all other claims. (ECF No. 58).

2. That the Court **GRANT** Susan McCauley's Motion to Dismiss and/or Summary Judgment (ECF No. 60).

## III. **REVIEW**

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this R&R. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this R&R to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address

each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: March 15, 2023                              s/PATRICIA T. MORRIS
                                                  Patricia T. Morris
                                                  United States Magistrate Judge