UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID BROWN,

    Plaintiff,

v.

                                            Case No. 21-cv-11565
                                            Hon. Matthew F. Leitman

DONALD HAIDERER,

    Defendant.
_____/

**<u>ORDER (1) OVERRULING PLAINTIFF'S OBJECTIONS (ECF No. 99) TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION (ECF No. 94), AND (2) GRANTING DEFENDANT'S RENEWED MOTION FOR SUMMARY JUDGMENT (ECF No. 89)</u>**

Plaintiff David Brown is a state prisoner currently in the custody of the Michigan Department of Corrections (the "MDOC"). He suffers from keratoconus, a disease of the eye described by one of his doctors as "a progressive degenerative condition characterized by thinning and irregularity of the central cornea, causing blurred and distorted vision as well as light sensitivity." (7/1/2022 Leung Letter, ECF No. 62, PageID.456.) In this action, Brown alleges that Defendant Donald Haiderer, an optometrist contracted by the MDOC to provide eye care to inmates, violated the Eighth Amendment when he refused to prescribe, or approve a prescription for, Zenlenses, a special type of contact lens used to correct vision for people with keratoconus.

1

Brown also alleges that Dr. Haiderer retaliated against him in violation of the First Amendment by refusing to prescribe the Zenlenses in retaliation for Brown's filing a grievance against him.

Now before the Court is a renewed motion for summary judgment by Dr. Haiderer. (*See* Mot., ECF No. 89.)  The motion was referred to the assigned Magistrate Judge, and she issued a Report and Recommendation recommending that the Court grant the motion (the "R&R"). (*See* R&R, ECF No. 94.)  Brown filed objections to the R&R (ECF No. 99) and Dr. Haiderer filed a response (ECF No. 100).  For the reasons stated below, the objections are **OVERRULED** and the motion for summary judgment is **GRANTED**.

# I

## A

The factual background of this case is fully set forth in the R&R and a second, previous report and recommendation that the Magistrate Judge prepared. (*See* R&R, ECF No. 94; *see also* 3/15/2023 Report and Recommendation, ECF No. 66.)  The Court recounts here only the most basic facts needed to understand the nature of Brown's claims.

Brown has a well-documented history of eye disease and vision problems dating back to at least 2005. (*See* R&R, ECF No. 94, PageID.892; 12/5/2005 MDOC Nurse Protocol, ECF No. 89-2, PageID.694.)  One of Brown's primary diagnoses is

keratoconus. Since 2005, Brown has been seen by numerous medical professionals who have attempted to address his eye issues and vision deficits through a variety of treatments. (*See generally* R&R, ECF No. 94, PageID.894-908.)

One treatment option prescribed to addresses Brown's keratoconus was Zenlenses. As the Magistrate Judge explained:

> ZenLenses are scleral lenses, which rest on the whites of the eyes (the sclera) rather than on the cornea. "Scleral contact lenses are made of gas-permeable material. They allow oxygen to pass through to your cornea. Scleral lenses are valuable if your corneas are abnormally shaped, as in astigmatism and keratoconus." https://www.webmd.com/eyehealth/what-to-know-about-scleral-contact-lenses (last visited March 13, 2023). Moreover, "scleral lenses can morph an irregular cornea into a smooth optical surface to correct vision problems caused by keratoconus and other forms of corneal ectasia. Furthermore, the space between the cornea and the back of the scleral lens acts as a fluid reservoir, continuously bathing the cornea. This can provide relief for people with severe ocular surface disease and may help the ocular surface to heal." American Academy of Ophthalmology, Update on Scleral Lenses, Gabrielle Weiner. https://www.aao.org/eyenet/article/update-on-scleral lenses (last visited March 13, 2023).

(*Id.*, PageID.900-901 n.3.)

It appears that the Zenlenses were first prescribed for Brown in 2019 by an optometrist at the Kellogg Eye Center at the University of Michigan (the "KEC"). (*See* 4/17/2019 Leung Progress Note, ECF No. 89-32, PageID.771.) The MDOC approved this prescription and dispensed Zenlenses to Brown in June of 2019. (*See*

3

7/1/2019 MDOC Consultation, ECF No. 91, PageID.860.)  At times, Brown had trouble tolerating the Zenlenses; at other times, he seemed able to tolerate them reasonably well. (*Compare* 8/7/2019 Leung Progress Notes, ECF No. 89-35, PageID.786 *and* 8/8/2019 MDOC Kite Resp., ECF No. 89-37, PageID.790, *with* 2/10/2021 Leung Progress Notes, ECF No. 89-48, PageID.817-821.)  However, not long after Brown obtained the Zenlenses, he lost them while being transported to and from an eye appointment. (*See* 9/12/2019 MDOC Clinical Progress Note, ECF No. 89-38, PageID.792; 2/10/2021 Leung Progress Note, ECF No. 89-48, PageID.817.)

Not long after Brown lost his Zenlenses, Dr. Haiderer became involved in his care.[1]  At the same time, Brown continued to be seen by providers at the KEC.

On February 11, 2021, a provider at the KEC issued Brown another prescription for Zenlenses. (*See* MDOC Clinical Encounter Admin. Note, ECF No. 91, PageID.864.)  Before Brown could obtain the Zenlenses that had been prescribed, a provider within the MDOC had to approve the prescription.  (*See id.*)

The task of reviewing the Zenlens prescription for approval within the MDOC fell to Dr. Haiderer.  At that time, he was not physically on site due to the COVID-

---

[1] Brown had seen Dr. Haiderer a few times several years prior, but those early encounters are not at issue in this action. (*See* 7/13/2011 MDOC Progress Note, ECF No. 89-12, PageID.714; 2/17/2011 MDOC Progress Note, ECF No. 89-14, PageID.718.)

4

19 pandemic. He therefore initially reviewed the prescription remotely. On February 16, 2021, he declined to approve the Zenlens prescription and explained his reasoning in an email:

> Mr. Brown 215918 was diagnosed with kerataconus [sic] at Kellogg Eye 2/11/2021. They advised Rigid Gas Permeable contacts [i.e., Zenlenses] instead of glasses Rx. He obviously has a poor history of compliance so success is questionable. Contacts [are] meant to last for years with replacement MDOC's responsibility, although they are expensive. Also, he would require reading glasses over contacts to read. An ACMO was recently denied for contacts. Also they are not a medical necessity. One option is to provide Mr. Brown with bifocal glasses[.]
>
> ***
>
> Contact Lens deferred for bifocal glasses.

(2/16/2021 Clinical Encounter Admin. Note, ECF No. 89-50, PageID.825.)

Several weeks later, Dr. Haiderer saw Brown in person and again declined to approve the Zenlens prescription. Dr. Haiderer offered the following explanation for that decision in a clinical note:

> Long term history of documented contact lens issues and non successful contact fittings. Also, obvious malingering related to vision deficit and sensitivity to light.
>
> ***
>
> Kellogg Eye 2/10/21 requested refit with Zenlens RGP lens due to Keratoconus (mild) diagnosis. However, Inmate has documented numerous multiple failures with contact lens wear X 10 years. Multiple contacts tried and failures due to comfort, non compliance lost, abuse and

5

>general discomfort. He is malingering his vision deficit. H/C and custody have observed good motility in his environment with no correction. He refused bifocal glasses and corneal surgery is not recommended.
>
>In general he has a poor potential for successful contact lens wear in corrections.

(3/9/2021 MDOC Clinical Encounter, ECF No. 89-52, PageID.829-830.)

In the end, Dr. Haiderer declined to approve the prescription for Zenlenses and instead ordered bifocal glasses for Brown.

**B**

Before turning to Dr. Haiderer's motion for summary judgment that is now pending before the Court, the Court pauses to provide some procedural history that is necessary to place the current motion into the proper context. The current motion is Dr. Haiderer's second request for summary judgment. He filed an earlier motion in which he argued that Brown's Eighth Amendment claim failed as a matter of law because his (Dr. Haiderer's) decision not to approve Zenlenses for Brown was a good faith exercise of medical judgment that was fully supported by the contents of Brown's medical records. (*See* Mot., ECF No. 58.) The Magistrate Judge recommended denying summary judgment on Brown's Eighth Amendment claim. (*See* 3/15/2023 Report and Recommendation, ECF No. 66, PageID.532.) The Magistrate Judge also opined that Brown's Complaint asserted a claim for retaliation in violation of the First Amendment, that Dr. Haiderer had not sought summary

judgment on that claim, and that the Court should deny summary judgment on that claim as well. (*See id.*, PageID.534-535.)

Dr. Haiderer objected to that recommendation. (*See* Obj., ECF No. 68.) In his objections, he argued, among other things, that (1) his refusal to approve Zenlenses did not rise to the level of an Eighth Amendment violation because it was based upon his good-faith exercise of medical judgment and (2) Brown's Complaint did not include a claim for First Amendment retaliation, and thus there was no basis to permit Brown to proceed with that claim. (*See id.*)

The Court held a hearing on the objections. During the hearing, the Court first addressed the Eighth Amendment claim and questioned whether Dr. Haiderer's rationale for declining to approve Zenlenses could be reconciled with the balance of Brown's medical records. (*See* 7/10/2023 Hr'g Tr., ECF No. 87, PageID.621-637.) In response, counsel suggested that some potentially important information supporting Dr. Haiderer's conclusions could be found in portions of Brown's medical records that counsel could not then identify, and which may not have been part of the then-existing record before the Court. (*See, e.g., id.*, PageID.633, 635.)

The Court also addressed the issue of the First Amendment retaliation claim. The Court noted that there appeared to be some confusion as to whether Brown actually asserted such a claim in his Complaint. (*See id.*, PageID.649.)

7

The Court ultimately concluded that it would overrule Dr. Haiderer's objections and deny Dr. Haiderer's motion. The Court first explained that it would deny summary judgment on Brown's Eighth Amendment claim because, given the state of the record at that time, it could not conclude as a matter of law that Dr. Haiderer's rationale for declining to approve Zenlenses could be reconciled with the balance of Brown's medical records. (*See id.*, PageID.644-649.) The Court then decided to permit Dr. Haiderer to file a renewed motion for summary judgment – which would include the medical records omitted from the first motion – if the parties were unable to settle the matter at a settlement conference that the Court ordered the parties to attend. (*See id.*, PageID.650.) The Court added that in a renewed motion for summary judgment, Dr. Haiderer could seek summary judgment on Brown's First Amendment retaliation claim on the basis that (1) the claim was not asserted in the Complaint and/or (2) the claim failed on the merits. (*See id.*, PageID.649.) The Court then entered an order reflecting these rulings. (*See* Order, ECF No. 86.)

The parties thereafter participated in a settlement conference and were unable to resolve their dispute.

## II

The Court now turns to Dr. Haiderer's renewed motion for summary judgment. (*See* Mot., ECF No. 89.) In that motion, Dr. Haiderer seeks judgment in

his favor on Brown's Eighth Amendment claim and on Brown's First Amendment retaliation claim (if one is deemed to be included in his Complaint). Dr. Haiderer included with his renewed motion a substantial number of Brown's medical records that he (Dr. Haiderer) did not include with his initial motion. (*See id.*)

## A

On June 17, 2024, the Magistrate Judge issued the R&R in which she recommended that the Court grant Dr. Haiderer's motion. (*See* R&R, ECF No. 94.) In the R&R, the Magistrate Judge first described the legal standards governing Brown's Eighth Amendment Claim:

> Under the Eighth Amendment, prisoners have a constitutional right to medical care. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). Prison officials may not act with deliberate indifference to the medical needs of their prisoners. *Id.* at 104. An Eighth Amendment claim has two components, one objective and the other subjective. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2002). Under the objective component, "the plaintiff must allege that the medical need at issue is 'sufficiently serious.'" *Id.* A plaintiff can "establish the objective component by showing that the prison ... provided treatment 'so cursory as to amount to no treatment at all.'" *Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018) (quoting *Dominguez v. Correctional Med. Servs.*, 555 F.3d 543, 551 (6th Cir. 2009)).
>
> The subjective component requires that the defendant act with deliberate indifference to an inmate's health or safety. *Farmer*, 511 U.S. at 834. Deliberate indifference "entails something more than mere negligence," *id.* at 835, but can be "satisfied by something less than acts or omissions for

9

> the very purpose of causing harm or with knowledge that harm will result." *Id.* To establish the subjective component, "the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded the risk." *Id.* at 837. Deliberate indifference may be established by showing an interruption of a prescribed plan of treatment, or a delay in medical treatment. *Id.*; *Caldwell v. Moore*, 968 F.2d 595, 602 (6th Cir. 1992). However, disagreement about the course of treatment does not present a constitutionally cognizable claim under § 1983. *Westlake v. Lucas*, 537 F.2d 857, 860 (6th Cir. 1976). The Eighth Amendment does not require that every request for medical care by an inmate or specific type of care be honored. *Fitzke v. Shappell*, 468 F.2d 1072, 1076 (6th Cir. 1972).

(*Id.*, PageID.890-892.)

After setting forth that standard, the Magistrate Judge provided a thorough and careful overview of Brown's voluminous medical records. Her review of the records reflects that Brown's medical case was a complicated one. Most importantly, she noted that Brown was evaluated by many different medical professionals and that, at various times, they reached substantially different conclusions concerning the appropriate course of treatment for Brown. For instance, the Magistrate Judge identified several records in which Brown's health care providers had recommended Zenlenses or another specialized treatment option known as PROSE (*see, e.g., id.*, PageID.894, 898) and she identified several records in which other providers concluded that Brown was not a good candidate for any

10

type of contact lenses. (*See, e.g., id.*, PageID.897.)  Likewise, although the Magistrate Judge did not focus on this point, Brown's medical records revealed disagreements among his medical providers as to whether he was malingering and as to the source of the problems that he had experienced with the fit and function of certain contact lenses.  At times, some providers indicated that he may have been over-stating his vision deficit, (*see* 2/13/2018 Hood Progress Note, ECF No. 89-22, PageID.739), while others reported that he actually had a vision deficit. (*See, e.g.*, 8/8/2011 Berhane Progress Note, ECF No. 89-15, PageID.720; 6/5/2019 Leung Letter, ECF No. 99, PageID.943.)  Some of his providers concluded that his contact lenses did not fit or function properly due to his non-compliance, (*see, e.g.*, 8/8/2011 Berhane Progress Note, ECF No. 89-15, PageID.720; 2/12/2016 MDOC Consultation, ECF No. 89-20, PageID.733), while another concluded that his problems with certain contact lenses were "not because of non-compliance but because of his advanced keratoconus." (8/7/2018 Hood Progress Notes, ECF No. 89-25, PageID.750.)

Based upon her thorough review of Brown's medical records and history, the Magistrate Judge concluded that Brown had failed to show that Dr. Haiderer acted with deliberate indifference when he declined to approve Brown's Zenlens prescription. (*See* R&R, ECF No. 94, PageID.913.)  According to the Magistrate Judge, the fact that Dr. Haiderer did not go along with the recommendation of the

11

KEC provider to supply Brown with Zenlenses did not rise to deliberate indifference because (1) Dr. Haiderer's rationale was reasonably based upon information reflected in Brown's medical records that weighed against providing Brown with Zenlenses and (2) Dr. Haiderer's determination not to provide Brown with Zenlenses was consistent with the opinions of some of the other medical professionals who had determined that Brown was not a suitable candidate for any contact lenses. (*See id.*, PageID.912-913.) The Magistrate Judge ultimately concluded that Brown had shown, at most, a disagreement among medical professionals as to the appropriate course of treatment for his keratoconus and that such a disagreement did not constitute deliberate indifference. (*See id.*, PageID.913, citing *Westlake v. Lucas*, 537 F.2d 857, 860 (6th Cir. 1976)). Finally, the Magistrate Judge recommended that the Court also grant summary judgment in Dr. Haiderer's favor on Brown's First Amendment retaliation claim because Brown "failed to show a genuine issue of material fact" with respect to that claim. (R&R, ECF No. 94, PageID.915.)

**B**

Brown has now filed objections to the R&R. (*See* Obj., ECF No. 99.) He urges the Court to permit him to proceed to trial on both his Eighth Amendment and First Amendment retaliation claims. For the reasons explained below, the Court will **OVERRULE** the objections.

**1**

As an initial matter, Brown's objections are legally insufficient because they fail to address any portion of the analysis in the R&R. Indeed, the purpose of objections to an R&R is "to address specific concerns with the [Magistrate Judge's] report," *Howard v. Sec'y of Health & Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991), but Brown's objections do not even mention the R&R. Instead, as indicated by the title to the objections – "Plaintiff's Objection to Defendant's Renewed Summary Judgment Motion" – they focus almost exclusively on arguments made by Dr. Haiderer in his underlying motion, not on the analysis in the R&R. Simply put, Brown's objections do nothing more than urge the Court to reach a result different than the one recommended by the Magistrate Judge. Such general objections are deficient as a matter of law. As the Sixth Circuit has explained, a party's "[f]ailure to identify specific concerns with a magistrate judge's report results in treatment of a party's objections as a general objection to the entire" report and recommendation, *McCready v. Kamminga*, 113 F. App'x 47, 49 (6th Cir. 2004), and such "[a] general objection is considered the equivalent of failing to object entirely." *Id.* Moreover, Brown's objections largely repeat arguments that Brown offered in opposition to the pending motion, but "an 'objection' that does nothing more than . . . simply summarize[] what has been presented before, is not an 'objection' as that term is used in this context." *Aldrich v. Bock*, 327 F.Supp.2d 743, 747 (E.D. Mich. 2004).

13

For all of these reasons, Brown's objections are legally insufficient. That insufficiency, standing alone, warrants overruling them.

Finally, even though Brown is proceeding *pro se*, it is neither unfair nor unreasonable to hold him to the rule requiring that objections address specific purported errors in a report and recommendation. The Magistrate Judge informed Brown of that very rule at the conclusion of the R&R. She told him that he could "serve and file specific written objections to the proposed findings and recommendations" and instructed him that "[a]ny objection must recite precisely the provision of this R&R to which it pertains." (R&R, ECF No. 94, PageID.915-16.) Instead of following that direction, Brown filed his general objections to the ultimate conclusion reached by the Magistrate Judge. Under these circumstances, Brown's objections are properly deemed deficient. *See Diamond v. Riverbend Apts.*, No. 2:23-cv-10005, 2023 WL 5385347, at *2 (E.D. Mich. 2023) (finding objections submitted by a *pro se* plaintiff legally deficient because they did not identify a specific concern with the Report and Recommendation).

**2**

Even if the Court were to consider the substance of Brown's objections, the objections would fail on the merits. With respect to his Eighth Amendment claim, Brown highlights at length that several medical professionals opined that Zenlenses were both necessary and appropriate and that Dr. Haiderer did not follow their

14

advice. And it is understandable why Brown does so. There were undeniably some highly trained medical professionals who concluded that Brown needed Zenlenses.

However, Brown does not acknowledge that, as described above, Dr. Haiderer's evaluation and plan was consistent with (1) opinions offered by other medical health professionals and (2) other portions of Brown's records which suggested that any form of contact lenses would not be appropriate for Brown. Brown's failure to acknowledge this contrary evidence and to explain how Dr. Haiderer's conduct rises to the level of deliberate indifference notwithstanding that evidence is fatal to his objections to the Eighth Amendment claim.

With respect to the First Amendment retaliation claim, Brown's objection does not identify any actual evidence that Dr. Haiderer ever said (or suggested or implied) that he was withholding Zenlenses based, even in part, on Brown's filing of a grievance. Brown has never submitted, and the objections do not cite, any deposition testimony, sworn statement, or other proof to support Brown's allegation of retaliation. Thus, assuming, *arguendo*, that Brown's Complaint asserts a claim for First Amendment retaliation, Brown has failed to show in his objections that the Magistrate Judge erred in recommending that the Court grant summary judgment against him on that claim.

## III

For all of the reasons explained above, **IT IS HEREBY ORDERED** as follows:

1. Plaintiff David Brown's objections (ECF No. 99) to the Magistrate Judge's Report and Recommendation (ECF No. 94) are **OVERRULED**.

2. Defendant Donald Haiderer's renewed motion for summary judgment (ECF No. 89) is **GRANTED.**

   **IT IS SO ORDERED.**

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated: September 30, 2024

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on September 30, 2024, by electronic means and/or ordinary mail.

s/Holly A. Ryan
Case Manager
(313) 234-5126